## CHESTER SANDERSON *et al. versus* THOMAS WHITE *et al.*

The *St.* 43 *Eliz. c.* 4, is in force here, at least so far as to determine what are gifts to charitable uses.

In the case of gifts in trust to charitable uses, no neglect, misapplication of funds or other breach of trust by the trustees, will give a right to the heirs of the donor to call upon a court of equity to declare a resulting trust for themselves. They have, therefore, no beneficial interest accruing from the non-execution of such a trust.

A testator gave certain property to trustees, in trust to be paid to them or their successors, whom they should name, and to be disposed of in the manner following : " the said sum shall be kept out at interest, &c. and the interest or annual income shall be applied to the pay or maintenance of a faithful, competent instructor of said school in Ashfield aforesaid ; and I hereby request my said trustees to give to said institution an appropriate name, relying on the integrity and faithfulness of said trustees and their successors, to make from time to time such rules and regulations as they may believe the best adapted to insure success, always having a regard to virtuous and pious youth of genius in indigent circumstances." The trustees were subsequently incorporated, the act of incorporation providing, " that all grants and donations, which had been or should be thereafter made for the purpose aforesaid, should be confirmed to the said trustees and their successors in that trust, forever, for the uses which in such instruments were or should be expressed; provided such uses should not be repugnant to the design of this act." It was *held*, that the trustees were authorized to apply for and to accept such act of incorporation, the provisions of the act being calculated to carry into effect and not to defeat the objects of the testator ; and that an application to this Court to compel the trustees to execute such trust, could not be sustained by the heirs of the testator, either as cestui que trusts or as visitors.

*It seems*, that trustees having themselves a visitatorial power, may, in case of any violation of law, be proceeded against either at law or in equity, as by *mandamus*, prohibition, information, or an action on the case. And where there are trustees in virtue of an express trust under a will, and where, therefore, they are within the equity jurisdiction of this Court, they are within its superintending power, not as itself possessing a visitatorial power, or a right to control the charity, but as possessing a general jurisdiction of all abuses of trusts.

T HIS was a bill in equity, filed by some of the heirs of Alvan Sanderson, formerly of Ashfield, against the executors of his will, and several other defendants appointed trustees under such will.

The bill set forth, that the testator, on May 12th, 1817, made his will, in which, after making various bequests, he proceeded as follows :

" In the next place, believing I have some more property remaining to bequeath, I have seriously and deliberately, in the fear of God as I trust, thought upon a distribution of the remainder thereof, and upon reflection feel it to be a duty I owe to my merciful sovereign, to contribute and devote my mite further to promote learning, morality and piety, and as a convenient building has lately been erected near my dwelling-house in Ashfield, for the purpose of accommodating those youth who may be desirous of improvement, and as it may so happen, that the quarterly bills paid for tuition will not be sufficient to compensate and pay a qualified instructer, especially where there are some virtuous aud pious youth of genius in indigent circumstances, who would esteem it a favor to be furnished charitably with tuition ; I do, therefore,. hereby give, assign and set over to the Rev. Josiah Spaulding," &c. " my trustees, the one half of said building, together with the land extending two rods west and two rods south of said building, to them and their successors forever, in trust, as a schoolhouse, and as to the avails of the rest, residue and remainder of my real and personal estate, goods and chattels of what kind and nature soever, I give, assign and set over to my said trustees, in trust to be paid to them or their successors, whom they shall name, by my executors whom I shall hereafter appoint, and to be disposed of for the purpose and in the manner following, that is to say, the said sum, whatever it may be, shall be kept out at interest on good security, or otherwise, in whole or in part, vested, as the said trustees or their. successors shall think best, in productive real estate, or in sure and permanent funds, and the interest or annual income shall be applied to the pay or maintenance of a faithful, competent instructer of said school in Ashfield aforesaid ; and I hereby request my said trustees to give to said institution an appropriate name, relying

on the integrity and faithfulness of said trustees and their suc-
cessors, to make from time to time such rules and regulations
as they may believe the best adapted to insure success, always
having a regard to virtuous and pious youth of genius, in indi-
gent circumstances, hoping and praying that the Lord will raise
up benefactors to this institution, and that the result may be
the reclaiming the vicious, the instruction of the ignorant, and
the promotion of true virtue and piety."

The bill further set forth, that the testator died on or about
June 22d, 1817 ; that a large amount of property, at divers
times, came into the hands of the trustees for the trust afore-
said ; that the plaintiffs were advised, that they had a right to
see that such trust fund was faithfully applied by the trustees,
and to call them to an account for any misapplication of the
funds or for any abuse of the trust ; that the trustees, combin-
ing, &c. in order to injure the plaintiffs and the beneficiaries
of such funds, refused to account for, appropriate, or vest such
funds so in their hands to be applied according to the will of
the testator, or to permit the plaintiffs to have access to any
means of information relative to the appropriation and disposal
of such funds, or otherwise to give any account of their pro-
ceedings in the premises, and disposed of and converted the
funds, or a great part thereof, contrary to such will, and to
their own use, and to purposes unknown.    Wherefore the bill
prayed, that the defendants might be compelled, as well to
make discovery of all their doings under the will, and of the
accounts and records of their proceedings, as to replace any
sums of money by them withdrawn from the fund and appro-
priated contrary to the will of the testator ; that the trustees
might be enjoined thereafter to keep the fund at interest on
good security, or otherwise vested in real estate, or in sure
and permanent funds, under the direction of this Court, and to
apply the interest or annual income to the payment of a faith-
ful, competent instructer of such school ; that they be also en-
joined to permit their records and accounts to be inspected at
seasonable hours by the heirs of the testator ; and that the
plaintiffs may have such further relief, &c.

The bill assigns, as a reason why all the heirs of the testa-
tor had not joined in the bill, that many of them had removed

tv distant parts of the United States, and their places of residence were not known, and that some of them had refused so to join ; and those who thus refused were made defendants.

It was agreed, at the hearing, that the trustees accepted the trust, and received a certain amount of property from the executors ; that some of the trustees having deceased, others were chosen by the survivors in their place ; and that such trustees, with some others associated with them, were, with the consent of the original trustees, incorporated by an act passed on the 15th of June, 1821, [*St.* 1821, *c.* 19,] by the name of The Trustees of the Sanderson Academy and School Fund, for the general purpose of managing the funds bequeathed by the testator, and such other donations as might afterwards be made to them, to the amount therein limited.

The defendants demurred to the bill, and insisted that the plaintiffs, as such heirs, had no right to call them to an account, or to require a discovery of their proceedings ; and by consent, the cause was argued on the demurrer, taken in connexion with the act of incorporation.

*Dewey* and *Grennell*, for the defendants.   The question is, in whom is the visitatorial power over these funds vested. The common law respecting eleemosynary corporations is our law, except in particular cases, where it has been modified by statute.   *Murdock, Appellant,* 7 Pick. 322.   The visitatorial power is vested in the founders of ecclesiastical and eleemosynary corporations and their heirs, from the necessity of the case, where no other visitors are appointed, it being necessary that there should be somewhere a power to overlook the application of the funds.   *Philips* v. *Bury,* 1 Ld. Raym. 5 ; 2 Kent's Comm. 240 ; *Dartmouth College* v. *Woodward,* 4 Wheaton, 564.   But where visitatorial powers are vested in others by the founder of an institution or the legislature, the heirs of the founder have no authority to call the trustees to account.   *Eden* v. *Foster,* 2 P. Wms. 325 ; *Green* v. *Rutherforth,* 1 Ves. sen. 472 ; *Attorney-General* v. *Middleton,* 2 Ves. sen. 327 ; *Attorney-General* v. *Governors of the Foundling Hospital* 2 Ves. jun. 47.

In early times, the objects of the charity were often incorporated ; and then the visitatorial power could not properly be

Sanderson
v.
White.

exercised by them, but remained in the founder and his heirs. But if a distinct body from the cestui que trusts is intrusted with the funds, the founder has no visitatorial power, but the trustees are vested therewith.    *Green* v. *Rutherforth*, 1 Ves. sen. 472 ; *Fuller* v. *Plainfield Academic School*, 6 Connect R. 532 ; *Philips* v. *Bury*, 1 Ld. Raym. 5 ; *Allen* v. *M'Keen*, 1 Sumner, 276.

In the present case the testator surrendered to the trustees the visitatorial power, without reservation ; and his heirs have no right to call the defendants to account for their proceedings. This Court, as a court of chancery, has a supervisory power over the doings of the trustees.    Coop. Eq. Pl. 143.

*Wells* and *Alvord*, for the plaintiffs.    The founder of this institution and his heirs have never parted with the visitatorial power.   Where the trustees of an institution receive the revenues, they are always liable to account to the founder and his heirs for an abuse of their trust ; and they never can be visitors in such case ; for they cannot visit themselves.    *Attorney-General* v. *Middleton*, 2 Ves. sen. 327 ; *Sutton's Hospital case*, 10 Co. R. 31 ; *Rex* v. *Bishop of Chester*, 2 Strange, 797 ; *Eden* v. *Foster*, 2 P. Wms. 327 ; *Dartmouth College* v. *Woodward*, 4 Wheaton, 518 ; *Allen* v. *M'Keen*, 1 Sumner, 276 ; 1 Bl. Comm. 484 ; *St. John's College* v. *Toddington*, 1 Burr. 200 ; *Rex* v. *Bishop of Ely*, 1 W. Bl. 71 ; *Attorney-General* v. *Griffith*, 13 Ves. 565 ; *Attorney-General* v. *Mayor of Rochester*, 2 Simons, 34 ; *Attorney-General* v. *Lock*, 3 Atk. 165 ; *Moggridge* v. *Thackwell*, 1 Ves. jun. 464 ; *Fisher* v. *Ellis*, 3 Pick. 326.

The cestui que trusts could undoubtedly sustain this application to the Court.    *Hadley* v. *Hopkins Academy*, 14 Pick 240.    If the claimants of the bounty of the testator could maintain a bill to enforce the performance of the trust, it would seem to follow, that the founder and his heirs might do so.

The visitatorial power of the testator and his heirs was not aken away by the act of incorporation.    *Dartmouth College* . *Woodward*, 4 Wheaton, 638.

Shaw C. J. afterward drew up the opinion of the Court. [After stating the facts.]    In the first place, it is perfectly clear, that this is a gift to a charitable use, and as such enti

Sanderson
*v.*
White.

tied to the protection and subject to all the provisions of law governing gifts to charitable uses. Since the passage of the act, 43 *Eliz. c.* 4, it has been an established rule, that all gifts are to be deemed charitable, which are enumerated in that statute as such, and none other. That statute expressly includes all gifts for schools of learning, free schools and scholars of universities. This statute passed before the emigration of our ancestors, and being made by way of declaration and amendment of the common law, has been acted upon in this Commonwealth, as far as it was applicable to our state and condition, and as far as our judicial tribunals have been competent in point of jurisdiction to execute and carry its provisions into effect. We consider the statute to be in force here, at least so far as to determine what are gifts to charitable uses. *Morice* v. *Bishop of Durham*, 9 Ves. 399 ; *S. C.* 10 Ves. 522.

Gifts to charitable uses are highly favored in law, and will be most liberally construed in order to accomplish and carry into effect the intent and purpose of the donor ; and trusts which cannot be supported in ordinary cases, for various reasons, will be established and carried into effect, where the trust is raised in support of a gift to a charitable use. If no executor or trustee is named, in ordinary cases the gift would fail, but in cases of charity the want will be supplied by appointment by a court of equity. *Mills* v. *Farmer*, 1 Meriv. 54.

But the distinction the most material to the present case is this, that where the purposes of the gift are vague and uncertain, and where the persons are uncertain, the gift will either be declared void for uncertainty, or if the gift and the trustee be sufficiently explicit, but the object of the trust vague and uncertain, it will be declared in ordinary cases a resulting trust for the heirs at law or distributees. But in case of a gift to charitable uses, this will never be done. In all such cases, the legacy will be sustained, and where a literal execution may become impracticable or inexpedient, in part or even in whole, it will be carried into effect so as to accomplish the general purpose of the donor, as nearly as circumstances will permit, and as such general charitable intent can be ascertained. From this view of the law governing gifts in trust to charitable uses.

Sanderson
v.
White.

it is manifest that no neglect, misapplication of funds, or other breach of trust, will give a right to the heirs at law to call upon a court of equity to declare a resulting trust for themselves, and, of course, that they have no pecuniary or beneficial interest accruing from the non-execution of such a trust. They do not, therefore, stand in the relation of *cestui que trusts* calling upon the court, as a court of equity, to enforce the performance of a trust in their favor.

Considering, then, that the plaintiffs cannot assert and enforce their claim as *cestui que trusts*, the only ground upon which they can sustain their claim is, that the defendants constitute a lay, eleemosynary corporation for the carrying into effect a perpetual charity, by the promotion and encouragement of a school for young men of genius, who need the aid of the charitable to assist them in their education ; and they rely upon the rule of the common law, that when an eleemosynary corporation is founded by an individual, and no visitor is appointed, the founder and his heirs forever are visitors of common right, and they assert the right to enforce the execution of the trusts of the will of their ancestor, under this claim of the visitatorial power.

This rule itself is accurately stated by Lord *Holt*, in his celebrated judgment in the case of *Philips* v. *Bury*, 2 T. R. 352. In considering what is the nature of a visitor, he distinguishes between those for public government and those for private charity. " But private and particular corporations for charity, founded and endowed by private persons, are subject to the private government of those who erect them ; and therefore, if there be no visitors appointed by the founder, the law appoints the founder and his heirs to be visitors, who are to proceed and act according to the particular laws and constitutions assigned them by the founders. Yelv. 65 ; *Fairchild* v. *Gaire*, 2 Cro. 60 ; where it is now admitted, on all hands, that the founder is patron, and, as founder, is visitor, if no particular visitor is assigned, &c. Further, this visitatorial power is an appointment of law, it is an authority to inspect the actions and regulate the behaviour of the members that partake of the charity. Now, indeed, where the poor, or those that receive the charity, are not incorporated, but there are certain

Sanderson
*v.*
White

trustees who dispose of the charity, according to the case in 10 Co., there is no visitor, because the interest of the revenue is not vested in the poor that have the benefit of the charity, but they are subject to the orders and directions of the trustees. But where they who are to enjoy the benefit of the charity are incorporated, there, to prevent all perverting of the charity, or to compose differences, there is by law a visitatorial power." This principle has been recognized in many subsequent cases, in England and in this country. *Rex* v. *Master &c. St. Catharine's Hall,* 4 T. R. 233 ; *Dartmouth College* v. *Woodward,* 4 Wheat. 660, 674 ; *Allen* v. *Mʻ Keen,* 1 Sumner, 300 ; 2 Kent's Comm. (3d ed.) 301.

It may be observed, by way of preliminary remark, that though this may, and probably must, be considered as a rule of law in this Commonwealth, there is no practice and no precedent to guide in the application of it, this being, so far as I know, the first instance in which the right of an heir to visit an eleemosynary corporation founded by his ancestor, has ever been judicially drawn in question, either in a court of law or equity. The difference between the condition of heirs in England, where the inheritance descends to the eldest son or brother, and in this country, where it vests in all the children male and female indefinitely, is such as would here render the rule one extremely difficult of application in practice, especially after a considerable lapse of time and many descents cast. The difficulty is well illustrated in the present case, where there are already, in the short period of twenty years, forty or fifty heirs of the donor. The rule, however, seems to have been recognized as in force in this Commonwealth, though it did not constitute the judicial decision. In *Murdock, Appellant &c.* 7 Pick. 322, *Parker* C. J. says, "by that law the power of visitor of all eleemosynary corporations is in the founder or his heirs, unless he has given the power of visitation to some other person or body, which is generally the case."

If, however, this be the law of the land, it must be so considered and applied, whenever a case is properly presented which requires its application, notwithstanding any practical difficulties attending it, and if such inconveniences are found to

Sanderson
v.
White.

be numerous and formidable in practice, the remedy is to be sought in legislative interposition. It is peculiarly the province of the legislature so to amend the laws, from time to time, as to adapt them to such alterations as have been already made conformable to our general policy and state of society, that the rules of law may correspond with each other in one entire and harmonious system. For reasons hereafter given, it is not necessary to express any opinion on this point, in the present case.

Another obvious remark is, that the bequest of the testator was not made to the trustees as a corporation, nor was it provided in terms, that they should ask for, or accept an act of incorporation. Perhaps, however, taking the whole provision together, if it was not distinctly contemplated by the testator, that the trustees should become incorporated, it was not inconsistent with his purpose, or with the trust reposed in them. It has already been suggested, that the law goes to a great extent in supporting gifts to charitable uses. Where a gift is made with a view to found a hospital or college, not in being, and which requires a future act of incorporation, the gift is nevertheless valid, and the law will sustain it and carry it into effect. *Case of Sutton Hospital*, 10 Co. R. 32 ; *Attorney-General* v. *Bowyer*, 3 Ves. 714. In order to determine, whether an act of incorporation was inconsistent with the purposes of the testator, it is necessary to examine the provisions of the will more particularly. That object was avowed to be, to promote learning, morality and piety, by a school for youth desirous of improvement, by assisting to compensate and pay a qualified instructer, especially where there are virtuous and pious youth of genius, in indigent circumstances, who would esteem it a favor to be furnished charitably with tuition. The object is, in its nature, lasting and perpetual, and would be greatly aided by an act of incorporation. The property also is given in trust to certain persons and their successors, whom they shall name, without any limitation of number or prescribed mode of appointment, thereby leaving it to them to adopt any convenient mode, which would insure a perpetual succession. There is a further provision, that such trustees and their successors may make, from time to time, such rules and regulations as they may believe best adapted to insure success.

With these large powers, and with this object in view, if the trustees named considered that an act of incorporation of themselves, and such persons of their nomination as they thought suitable, the best mode of securing a regular succession of trustees, a secure and faithful investment and administration of the funds, and a perpetual accomplishment of the design of the donor, they were authorized to ask for and accept such an act of incorporation, provided the provisions of such act were calculated to promote and carry into effect, and not in form or substance to defeat, the objects of the testator. The act in question seems to be of this character. After incorporating the trustees in usual form, by the name of the Sanderson Academy and School Fund, it provides that all grants and donations, which have been or shall hereafter be made for the purpose aforesaid, shall be confirmed to said trustees and their successors in that trust forever, for the uses, which in such instruments are or shall be expressed. That authority to hold other grants for the like purposes, to a limited amount, and that the acceptance of such grants, are not inconsistent with the intentions of the testator, is manifest from this ; that after enjoining a regard to virtuous and pious youth of genius, in indigent circumstances, he concludes by hoping and praying, that the Lord will raise up benefactors to this institution, and that the result may be the reclaiming the vicious, the instruction of the ignorant, and the promotion of true virtue and piety.

Supposing the trustees to have acted within the scope of their authority, in procuring an act of incorporation, so that they were constituted an eleemosynary corporation for the administration of the charity of the founder, still the questions recur : 1. Whether the plaintiffs can rightfully claim to act as visitors ; 2. Whether their remedy is by bill in equity ; and 3. Whether they show such a breach of trust on the part of the trustees, as will enable them to sustain the bill.

The rule as laid down above, and recognized in all the cases is, that the law appoints the founder and his heirs to be visitors, where he has not confided the visitatorial power to other hands ; but where he has done so, no such resulting power to the founder and his heirs, is raised by implication. In most cases of eleemosynary corporations the founders do not retain

Sanderson
v.
White.

this visitatorial power in themselves, but assign or vest it in favor of some certain specified trustees or governors of the institution.    2 Kent's Comm. 301.

It is not necessary that the visitatorial power should be given in terms ; where that general control, superintendence and management of the institution is given, which essentially constitutes the visitatorial power, and especially where those thus intrusted with the management and control are not themselves the ultimate beneficiaries, there the power of visitors is in the overseers or trustees, and does not vest by implication, in the donor or his heirs.    And this is the nature and character of most if not of all the colleges, academies and free schools which have been established in New England, and well enough accounts for the fact, that no question of this kind has ever before arisen.

In applying these rules to this will, it is manifest, that the trustees and their associates were not the persons ultimately intended to enjoy the benefit of the charitable donation of the founder.    Whether this ultimate benefit is considered to enure to the use of the instructer of the institution, whose compensation is to be enlarged by the income from this fund, or the youth who are to receive gratuitous tuition in whole or in part, in either case the trustees receive nothing but the satisfaction of administering the donor's bounty.

And further, the power of general superintendence and management, that is, the visitatorial power, is confided to these trustees in the fullest manner.    He authorizes them to invest the funds, as they shall think best, the interest to be applied to the pay or maintenance of a faithful, competent instructer of said school in Ashfield, and he requests them to give to said institution an appropriate name.    The appointment and remov al of the master was not given in terms, but it was by necessary implication, because they would pay such instructer only as they should judge faithful and competent.    But another clause is still more express and explicit ; " relying on the integrity and faithfulness of said trustees and their successors, to make from time to time such rules and regulations as they may believe best adapted to insure success."    On both grounds, therefore, one, that the trustees themselves were not the ultimate objects of the donor's charity, and the other, that

large and ample power of control and management was con-
fided to the trustees, we are of opinion, that no visitatorial
power resulted to the heirs of the donor, and that they cannot
maintain this suit.

Sanderson
*v.*
White.

From this view of the subject, however, it is not to be con-
cluded, that trustees having themselves a visitatorial power are
beyond the reach and animadversion of the law. So far as the
trustees are, from the terms of the will under which they hold,
or from the nature of the objects to be obtained, vested with a
power to act, that power is, in its nature, discretionary, and
*quasi* judicial, and in the exercise of it, so far as they act with
good faith, no other tribunal will or can control them. But in
case of any violation of law, they may be proceeded against by
any suitable and appropriate process, either at law or equity,
as by writ of *mandamus*, or prohibition, by information, or by
an action on the case, where that remedy is appropriate. And
where there are trustees, in virtue of an express trust under a
will, and where, therefore, they are within the equity jurisdic-
tion of this Court, they are, it seems, within the superintending
power of a court of equity, not as if itself possessing a visita-
torial power, or a right to control the charity, but as possess-
ing a general jurisdiction of all abuse of trusts, to redress griev-
ances and prevent and suppress frauds. In such case, the
interests of the public, or what is the same thing, of the gen-
eral and indefinite objects of the charity, would be represented
by the attorney-general. Chancellor *Kent*, in his excellent
treatise, says, it is also well understood, that the court of chan-
cery has a jurisdiction over charitable corporations for breaches
of trust. 2 Kent's Comm. 304.

This opinion renders it unnecessary to consider, whether this
bill could have been sustained in its present form, inasmuch as
it does not allude to the fact of the incorporation of the trus-
tees, or charge them in their corporate capacity ; and upon
that point we give no opinion. Perhaps this error, if it might
have been considered one, was an error of form only, and open
to amendment.

On the whole, the Court are of opinion, that the plaintiffs
nave no right, either as *cestui que trusts*, or as visitors, to re-
quire the discoveries and accounts sought for in the bill, and
that the bill be dismissed, with costs.